[Cite as *Nail Nook, Inc. v. Hiscox Ins. Co., Inc.*, 2021-Ohio-4211.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

THE NAIL NOOK, INC., :

     Plaintiff-Appellant, :

                    No. 110341

     v. :

HISCOX INSURANCE COMPANY
INC., ET AL., :

     Defendants-Appellees. :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 2, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-20-933244

---

### *Appearances:*

Taubman Law and Bruce D. Taubman, *for appellant.*

Bailey Cavalieri, L.L.C., Jolene S. Griffith, and Elan R. Kandel; Barrasso Usdin Kupperman Freeman & Sarver, L.L.C., Judy Y. Barrasso, and Chloé M. Chetta, *for appellee.*

FRANK D. CELEBREZZE, JR., J.:

{¶ 1} Plaintiff-appellant, The Nail Nook Inc. ("Nail Nook"), appeals from the trial court's February 24, 2021 decision granting the defendant-appellee's, Hiscox Insurance Company, Inc.'s ("Hiscox" or the "insurance company") motion

for judgment on the pleadings.  After a thorough review of the record and law, this court affirms.

## I. Procedural History

{¶ 2}  In June 2020, Nail Nook filed a complaint for declaratory judgment and breach of contract against Hiscox and defendant-appellee David I. Schonbrun ("Schonbrun").  Nail Nook subsequently dismissed the complaint, without prejudice, against Schonbrun only.

{¶ 3}  The record establishes that Hiscox issued a commercial business owners insurance policy to Nail Nook, which operates a nail salon in Bratenahl.  Nail Nook sought coverage under the policy for coronavirus-related business interruption losses as a result of Ohio Governor Mike DeWine's March 2020 executive order declaring a state of emergency due to the coronavirus; the order mandated the closing of certain businesses, including nail salons.  Hiscox denied coverage, and Nail Nook filed the within action.

{¶ 4}  In September 2020, Hiscox filed a motion for judgment on the pleadings under Civ.R. 12(C), contending that under the policy's "virus or bacteria" exclusion, Nail Nook was not entitled to coverage for its claim.  Nail Nook opposed the motion, contending that the policy was ambiguous because it does not define "direct" or "physical loss or damage."  Nail Nook maintained, as it alleged in its complaint, that its "physical property was damaged."  Nail Nook did not address the policy's "virus or bacteria" exclusion, however.

{¶ 5} The trial court granted the insurance company's motion for judgment on the pleadings. The trial court did not reach the issue of whether Nail Nook could prove "direct physical loss of or damage to Covered Property," finding the Policy's "clear and unambiguous virus exclusion" precluded all potential coverage:

> [T]he clear and unambiguous virus exclusion contained in the insurance policy issued by Hiscox to Nail Nook specifically excludes coverage for any loss or damage caused directly or indirectly by a virus, such as the coronavirus (SARS-CoV-2).
>
> * * *
>
> Applying the plain language of the insurance policy, specifically the foregoing virus exclusion, to the allegations contained in Plaintiff's Complaint, the Court finds that Plaintiff can prove no set of facts that would entitle it to coverage under the policy for loss or damage caused by the coronavirus, as alleged.
>
> In its complaint, Nail Nook generally alleges that it sustained losses due to coronavirus. Nail Nook acknowledges the coronavirus is, in fact, a virus (Complaint at ¶ 9, 10, 11, 19) and this virus is capable of inducing physical distress, illness or disease (Complaint at ¶ 20, 21). The Court finds that under the policy's clear and unambiguous virus exclusion, Nail Nook's alleged losses are excluded from coverage.

Trial court's February 24, 2021 opinion and order.

{¶ 6} Nail Nook now appeals, raising the following assignment of error for our review: "The Trial Court erred in granting Appellee's judgment on the pleadings because Hiscox's insurance policy is ambiguous and subject to multiple interpretations."

## A. Factual History: The Policy

{¶ 7} Hiscox issued Businessowners Policy No. UDC-2401467-BOP-19 to Nail Nook for the period December 1, 2019, through December 1, 2020 ("the

policy"). The policy primarily insures contents located at Nail Nook's place of business. Specifically, the policy covers "Business Personal Property * * * located in or on the buildings at the described premises," such as "office equipment, furniture, [and] computers." The policy does not cover the "described premises," as in Nail Nook's actual building or business space.

{¶ 8} Moreover, and relevant to this case, the policy's general coverage provision does not cover all losses. Rather, the policy insures against only "direct physical loss of or damage to Covered Property at the [described] premises * * * caused by or resulting from any Covered Cause of Loss." "Covered Causes of Loss" are "risks of direct physical loss unless the loss is [excluded or limited under the Policy]." "Additional Coverage" is available if the insured establishes a threshold claim for coverage because of "direct physical loss of or damage to" the contents; the "Additional Coverage" relates to certain financial losses caused by the "direct physical loss of or damage to Covered Property."

{¶ 9} The policy also has a "Business Income" provision, which provides:

We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

{¶ 10} Additionally, an "Extra Expense" provision of the policy provides as follows:

We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss of or damage to property at the described premises.

The loss or damage must be caused by or result from a Covered Cause of Loss.

**{¶ 11}** The policy defines "period of restoration" as the time when physically lost or damaged property that caused the suspension of operation "should be repaired, rebuilt or replaced with reasonable speed and similar quality" or until "business is resumed at a new permanent location."

**{¶ 12}** The policy also sets forth the relevant exclusion:

B. Exclusions

We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

* * *

j. Virus or Bacteria

(1) Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

**{¶ 13}** As noted above, the trial court found that the "clear and unambiguous virus exclusion" precluded all potential coverage.

## II. Law and Analysis

**{¶ 14}** In its sole assignment of error, Nail Nook challenges the trial court's judgment granting Hiscox's motion for judgment on the pleadings.

**{¶ 15}** A Civ.R. 12(C) motion for judgment on the pleadings raises only questions of law that are reviewed under a de novo standard of review. *Cohen v.*

*Bedford Hts.*, 8th Dist. Cuyahoga No. 101739, 2015-Ohio-1308, ¶ 7. Courts review

Civ.R. 12(C) motions under a Civ.R. 12(B)(6) standard:

> The Ohio Supreme Court has held that a Civ.R. 12(C) motion for judgment on the pleadings is to be considered as if it were a belated motion to dismiss for failure to state a claim upon which relief can be granted. *State ex rel. Pirman v. Money*, 69 Ohio St.3d 591, 592, 635 N.E.2d 26 (1994). Therefore, we will analyze the [Civ.R 12(C) motion] under the same principles which we would apply in reviewing a Civ.R. 12(B)(6) dismissal.

*Black v. Coats*, 8th Dist. Cuyahoga No. 85067, 2005-Ohio-2460, ¶ 6.

{¶ 16} "In order to dismiss a complaint for failure to state a claim upon which relief can be granted, the court must find beyond doubt that plaintiff can prove no set of facts warranting relief after it presumes all factual allegations in the complaint are true, and construes all reasonable inferences in plaintiff's favor." *Black* at ¶ 7, citing *State ex rel. Seikbert v. Wilkinson*, 69 Ohio St.3d 489, 490, 633 N.E.2d 1128 (1994).

{¶ 17} Initially, we recognize the well-established rule that construction of a written contract is a matter of law to be determined by the court. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph one of the syllabus. Accordingly, when the terms of a contract are clear and unambiguous a court "cannot in effect create a new contract by finding an intent not expressed in the clear language of the contract." *Id.* at 246.

{¶ 18} After reviewing the record, we agree with the trial court that, "[u]nder the policy's clear and unambiguous virus exclusion, Nail Nook's alleged losses are excluded from coverage."

{¶ 19} Moreover, the subject policy provides "Business Personal Property" coverage for things like "office equipment, furniture, and computers," but it does not insure Nail Nook's business activities generally. Coverage for business interruption losses is available only if the insured can prove a "direct physical loss of or damage to Covered Property" (i.e., the equipment, furniture, and computers) caused a suspension of business operations. Nail Nook has not alleged that its business personal property has been physically lost or damaged. Rather, it contended that its damages were "all due to the coronavirus." The plain language of the policy excludes coverage for such a loss.

{¶ 20} Hiscox has cited numerous Ohio and other states' cases that have considered business interruption losses due to the coronavirus. We note two in particular, *Santo's Italian Café LLC v. Acuity Ins. Co.*, 6th Cir. No. 21-3068, 2021 U.S. App. LEXIS 28720 (Sept. 22, 2021), and *MIKMAR, Inc. v. Westfield Ins. Co.*, N.D.Ohio No. 1:20-CV-01313, 2021 U.S. Dist. LEXIS 29591 (Feb. 17, 2021).

{¶ 21} In *Santo's*, an Italian restaurant in Medina, sued its insurer, Acuity Insurance Company, for coverage under its commercial property insurance policy, which covers business interruption "caused by direct physical loss of or damage to property," as a result of lost revenue due to the pandemic and the state's pandemic orders. The district court granted the insurance company's motion to dismiss, concluding that the policy did not cover this circumstance. The Sixth Circuit agreed and affirmed the district court's dismissal.

{¶ 22} The policy language at issue in this appeal is similar to the policy language at issue in *Santo's*. The policy language in *Santo's* stated that "[w]e will pay for direct physical loss of or damage to Covered Property * * * caused by or resulting from any Covered Cause of Loss." *Id.* at 3-4. With respect to "Covered Causes of Loss," the policy applied to "Risks of Direct Physical Loss." *Id.* at 4. The policy also provided numerous "Additional Coverages," one of which includes coverage for "Business Income and Extra Expense." *Id.* Under that provision, the insurance company was required to reimburse the restaurant owner for business income lost "due to the necessary suspension" of its operations if the "suspension" was "caused by direct physical loss of or damage to property" at the restaurant. *Id.* The policy defined a "suspension" as either "[t]he partial slowdown or complete cessation of * * * business activities" or when "a part or all of the described premises is rendered untenantable." *Id.*

{¶ 23} The Sixth Circuit considered the following question: "Does a pandemic-triggered government order, barring in-person dining at a restaurant, count as 'direct physical loss of or damage to' the property?" *Id.* at 5. The Sixth Circuit answered the question in the negative: "The policy does not cover this loss. The restaurant has not been tangibly destroyed, whether in part or in full. And the owner has not been tangibly or concretely deprived of any of it. It still owns the

restaurant and everything inside the space. And it can still put every square foot of the premises to use, even if not for in-person dining use." *Id.* at 8.[1]

{¶ 24} Although *Santo's* did not consider the "virus exclusion," *MIKMAR* did. In *MIKMAR*, the plaintiffs, MIKMAR, Inc. and Michael's Inc., were companies doing business as LaMalfa Centre and Vine Beverage and Caterers, which operated an adjoining hotel and banquet facility in Mentor. When the plaintiffs sustained losses due to the pandemic, they filed claims for lost business income under their insurance policies issued by defendant Westfield Insurance Company; the insurance company denied the claims. The plaintiffs then filed suit on their own behalf, as well as on behalf of a putative class of other hospitality businesses that own and operate hotels, banquet halls, and catering or event facilities. The insurance company filed a motion to dismiss for failure to state a claim upon which relief can be granted, which the trial court granted.

{¶ 25} The plaintiffs' policies were substantially similar, and provided coverage for "direct physical loss of or damage to Covered Property * * * caused by or resulting from any Covered Cause of Loss." *Id.* at 3. "Covered Cause of Loss" was defined as "[d]irect physical loss unless the loss is excluded or limited" under the policy. *Id.* The policies also provided "Business Income and Extra Expense" coverage.

---

[1] The policy also included the following exclusion: Acuity "will not pay for loss or damage caused directly or indirectly by * * * [a]ny virus * * * capable of inducing physical distress, illness or disease." *Id.* at 20. The Sixth Circuit declined to address this exclusion, stating that "the absence of initial coverage for [the restaurant's] claim suffices to reject it." *Id.*

{¶ 26} In regard to "Business Income and Extra Expense" coverage, the policies covered the "actual loss of Business Income" sustained "due to the necessary suspension of your 'operations' during the 'period of restoration.'" *Id.* at 4. The policies required that the "suspension must be caused by direct physical loss of or damage to the property" and the "loss or damage must be caused by or result from a Covered Cause of Loss," which also required direct physical loss. The policies also covered the "Extra Expense you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or damage to the property at the described premises." *Id.*

{¶ 27} Business Income and Extra Expense coverage were both limited by the "period of restoration," which meant the time between the "direct physical loss or damage caused by * * * any Covered Cause of Loss" and the "date when the property * * * should be repaired, rebuilt or replaced[.]" *Id.* The end date for the period of restoration under MIKMAR's policy was alternatively the "date when business is resumed at a new permanent location." *Id.* at 4-5.

{¶ 28} MIKMAR's policy also contained several exclusions, one of which was the "virus or bacteria" exclusion. The exclusion precluded coverage for "[a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." *Id.* at 6. According to the policy, where an exclusion applies, the "loss or damage is excluded regardless of any other cause or event that contributed concurrently or in any sequence to the loss." *Id.* at 6-7. The district court found that the insurance company "carried its burden of showing that the

losses Plaintiffs allege fall squarely within the policy language of the virus exclusion. "In the Court's view, the language of the exclusion is plain and unambiguous and [excludes] the losses Plaintiffs allege." *Id.* at 30.

{¶ 29} The *MIKMAR* court reasoned that even if the government orders were in the "causal chain" of events leading to a plaintiff's loss, because the policy language excludes losses caused "directly or indirectly" by a virus, the exclusion applies:

> This policy language sweeps aside the causation question Plaintiffs raise to try to avoid application of the exclusion's plain language. * * * [T]he reach of the exclusion to losses a virus indirectly causes does not require parsing the causal chain legally and obviates the need for factual development. To the extent there is any doubt on the matter, [the] policy applies the exclusion "regardless of any other cause or event that contributed concurrently or in any sequence to the loss."

*Id.* at *29.

{¶ 30} Here, the trial court correctly ruled that the virus exclusion in Nail Nook's Policy is "clear and unambiguous"; the finding comports with other courts that have addressed substantially similar exclusions to the exclusion at issue in this case. As noted above, aside from the virus exclusion, and assuming all of the allegations in Nail Hook's complaint were true, Nail Nook did not have a valid claim for coverage because it could not prove "direct physical loss of or damage to Covered Property" required for "Business Income or Extra Expense" coverage under the policy.

{¶ 31} Based on the foregoing analysis, the trial court properly granted Hiscox's motion for judgment on the pleadings. Nail Nook's sole assignment of error is overruled.

{¶ 32} Finally, we join the Sixth Circuit in sympathizing with all businesses impacted by the pandemic and pandemic-related orders:

> The singular challenges facing restaurants, bars, and other hospitality services over the last eighteen months are not lost on us. Staying in business through a once-in-a-century pandemic (let us hope) that has prompted all kinds of new government regulations, including prohibitions on many in-person services, has to be trying. Sure, state and federal loans and grants have offered some support for entities that suffered government-created losses of this sort, and surely that aid has allowed some companies to survive. But that truth provides little solace to those that did not.
>
> That leaves a hard reality about insurance. It is not a general safety net for all dangers. If risk is not having money when you need it, insurance is one answer to perilous events that could prompt a sudden drop in revenue. Fair pricing of insurance turns on correctly accounting for the likelihood of the occurrence of each defined peril and the cost of covering it. Efforts to push coverage beyond its terms creates a mismatch, an insurance product that covers something no one paid for and, worse, runs the risk of leaving insufficient funds to pay for perils that insureds did pay for. That is why courts must honor the coverage the parties did — and did not — provide for in their written contracts of insurance.

*Santo's Italian Café LLC*, 6th Cir. No. 21-3068, 2021 U.S. App. LEXIS, at 22-23.

### III. Conclusion

{¶ 33} After thoroughly reviewing the record, we affirm the trial court's judgment granting Hiscox's motion for judgment on the pleadings. Because there is no basis for coverage for coronavirus-related damages, the trial court properly granted Hiscox's motion.

**{¶ 34}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
FRANK D. CELEBREZZE, JR., JUDGE

MARY J. BOYLE, A.J., and
LISA B. FORBES, J., CONCUR