CHEROKEE NATION v. LEXINGTON INSURANCE CO.
2022 OK 71
Case Number: 119359; Comp. w/ 119413, 11970
Decided: 09/13/2022
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2022 OK 71, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

CHEROKEE NATION; CHEROKEE NATION BUSINESSES, LLC; CHEROKEE NATION ENTERTAINMENT, LLC, Plaintiffs/Appellees,
v.
(1) LEXINGTON INSURANCE COMPANY; (2) CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO. PJ193647: (ASC 1414, KLN 510, ATL 1861, CIN 318, TAL 1183, AGR 3268 and XL CATLIN INSURANCE COMPANY UK Ltd.); (3) CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO. PJ1900131: (CNP4444); (4) UNDERWRITERS AT LLOYD'S -- ASPEN SPECIALTY INSURANCE COMPANY; (5) CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO. PJ1933021: (ASC 1414, KLN 510, CIN 318, ATL 1861, CHN 2015, APL 1969, QBE 1886 and XL CATLIN INSURANCE COMPANY UK Ltd.); (6) CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO. PD-10363 (BRT 2987) FOR CHEROKEE NATION ENTERTAINMENT, LLC; PD-10367-05 (BRT2987) FOR CHEROKEE NATION BUSINESSES, and PD-11091-00 (BRT2987) FOR CHEROKEE NATION; (7) CERTAIN UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICY NO. PJ19000067: (KLN 510, TMK 1880, CNP 4444, ATL 1861, BRT 2987 and 2988, AUW 0609, TAL 1183, AUL 1274, NEON WORLDWIDE PROPERTY CONSORTIUM 9761); (8) HOMELAND INSURANCE COMPANY OF NY (ONE BEACON); (9) HALLMARK SPECIALTY INSURANCE COMPANY; (10) ENDURANCE WORLDWIDE INSURANCE LTD. T/AS SOMPO INTERNATIONAL (POLICY NUMBERS PJ1900134-A and PJ1900134-B); (11) ARCH SPECIALTY INSURANCE COMPANY; (12) EVANSTON INSURANCE COMPANY; (13) ALLIED WORLD NATIONAL ASSURANCE COMPANY; (14) LIBERTY MUTUAL FIRE INSURANCE COMPANY; (15) XL INSURANCE AMERICA, INC.; (16) AXA/XL AMERICA, INC.;

ON APPEAL FROM THE DISTRICT COURT OF CHEROKEE COUNTY

The Honorable Douglas Kirkley, Trial Judge

¶0 Cherokee Nation filed a declaratory judgment action seeking insurance coverage under the business interruption provision of a policy issued by insurers for the economic losses it incurred when it temporarily closed its properties due to the threat of COVID-19. The district court granted Cherokee Nation's motion for partial summary judgment, holding the phrase "direct physical loss" in the business interruption provision of the policy included coverage for losses sustained by property rendered unusable for its intended purpose. The district court also found that none of the exclusions raised by the insurers applied to Cherokee Nation's loss. The insurers appealed, and we retained the appeal. We hold that Cherokee Nation's losses are not covered under the business interruption section of the insurance policy at issue. The district court erred in finding business interruption coverage when Cherokee Nation did not sustain immediate, tangible deprivation or destruction of property.

DISTRICT COURT'S JUDGMENT REVERSED AND REMANDED FOR 
PROCEEDINGS CONSISTENT WITH THIS OPINION.

Michael Burrage, Reggie Whitten, Patricia Sawyer, Austin Vance, J. Renley Dennis, and Tiffani J. Shipman, Whitten Burrage, Oklahoma City, Oklahoma, for Plaintiffs/Appellees.

Bradley Beckworth and Chad E. Ihrig, Nix Patterson, LLP, Austin, Texas, for Plaintiffs/Appellees.

Sara Hill, General Counsel for Cherokee Nation, Tahlequah, Oklahoma, for Plaintiffs/Appellees.

Phil R. Richards and Joy Tate, Richards & Connor, Tulsa, Oklahoma, for Lexington Insurance Company, Defendant/Appellant. 

Richard J. Doren and Matthew A. Hoffman, Gibson Dunn & Crutcher LLP, Los Angeles, California, for Lexington Insurance Company, Defendant/Appellant. 

Harvey D. Ellis and Timila S. Rother, Crowe & Dunlevy, P.C., Oklahoma City, Oklahoma, for Certain Underwriters at Lloyd's, London et al. and Endurance Worldwide Insurance Ltd., Defendants/Appellants.

Amy Sherry Fischer and Larry D. Ottoway, Foliart, Huff, Ottaway & Bottom, Oklahoma City, Oklahoma, for Certain Underwriters at Lloyd's, London et al. and Endurance Worldwide Insurance Ltd., Defendants/Appellants.

Matthew P. Cardosi, Robins Kaplan LLP, Boston, Massachusetts, for Certain Underwriters at Lloyd's, London et al. and Endurance Worldwide Insurance Ltd., Defendants/Appellants.

Amy M. Churan, Robins Kaplan LLP, Los Angeles, California, for Certain Underwriters at Lloyd's, London et al. and Endurance Worldwide Insurance Ltd., Defendants/Appellants.

Jon E. Brightmire and Michael S. Linscott, Doerner, Saunders, Daniel & Anderson, L.L.P., Tulsa, Oklahoma, for Aspen Specialty Insurance Company and Aspen Insurance UK, Ltd., Defendants/Appellants.

Sara E. Potts, Doerner, Saunders, Daniel & Anderson, L.L.P., Oklahoma City, Oklahoma, for Aspen Specialty Insurance Company and Aspen Insurance UK, Ltd., Defendants/Appellants.

James C. Milton, William O'Connor, Bryan J. Nowlin, and Margo E. Shipley, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Tulsa, Oklahoma, for Homeland Insurance Company of NY (One Beacon), Arch Specialty Insurance Company, Allied World National Assurance Company, Liberty Mutual Fire Insurance Company, and Landmark American Insurance Company, Defendants/Appellants.

Shannon O'Malley, Kristin Cummings, and Bennett Moss, Zelle LLP, Dallas, Texas, for Homeland Insurance Company of NY (One Beacon), Arch Specialty Insurance Company, Liberty Mutual Fire Insurance Company, and Landmark American Insurance Company, Defendants/Appellants.

Jack Cadenhead, The Cadenhead Law Firm, P.C., Seminole, Oklahoma, for Allied World National Assurance Company, Defendant/Appellant.

Dustin DuBose, Mound Cotton Wollan Greengrass, LLP, Houston, Texas, for Allied World National Assurance Company, Defendant/Appellant.

Kerry R. Lewis and Dan S. Folluo, Rhodes, Hieronymus, Jones, Tucker & Gable, PLLC, Tulsa, Oklahoma, for Hallmark Specialty Insurance Company, Aspen Specialty Insurance Company, and Aspen Insurance UK, Ltd., Defendants/Appellants.

Joe M. Hampton and Johnny R. Blassingame, Hampton Barghols Pierce, PLLC, Oklahoma City, Oklahoma, for Chubb Bermuda International,

Susan Sullivan, Clyde & Co. US, LLP, Los Angeles, California, for Chubb Bermuda International, Defendant/Appellant.

Robert W. Fischer and Taylor L. Davis, Clyde & Co. US, LLP, Atlanta, Georgia, for Chubb Bermuda International, Defendant/Appellant.

Roger N. Butler, Jr. and Nathaniel T. Smith, Secrest, Hill, Butler, Secrest, Tulsa, Oklahoma, for Evanston Insurance Company, Defendant/Appellant.

C. William Threlkeld and Sterling E. Pratt, Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, Oklahoma, for XL Insurance America, Inc., Defendant/Appellant.

Winchester, J.

¶1 The COVID-19 pandemic has impacted businesses in an unprecedented way. Naturally, businesses have turned to their insurers for the economic losses they have experienced. Appellees Cherokee Nation, Cherokee Nation Businesses, LLC, and Cherokee Nation Entertainment, LLC

¶2 Nation brought a declaratory judgment action in district court seeking a ruling that the Tribal First Policy Wording, Tribal Property Insurance Program USA Form No. 15 (Policy) provides coverage under the business interruption provision for the losses it incurred due to its temporary closure. The question before this Court is whether the district court correctly determined that business interruption coverage for losses "caused by direct physical loss or damage . . . to real and/or personal property" includes losses incurred by some intangible harm that rendered Nation's property unusable for its intended purpose. The district court's expansion of business interruption coverage ignores the plain, unambiguous language of the Policy and the decisions from nearly all circuit courts of appeals, many federal district courts, and state courts that have ruled that business interruption coverage requires actual, tangible loss or damage to property, not just loss of use. We agree with the clear majority of jurisdictions and hold that "direct physical loss or damage . . . to real and/or personal property" requires immediate, actual or tangible deprivation or destruction of property.

FACTS AND PROCEDURE

¶3 In July 2019, Nation purchased an all-risk property insurance Policy from Insurers that included business interruption coverage. In March 2020, Nation decided to temporarily close its properties due to the threat of COVID-19. The properties remained closed until June 2020. Nation then brought this action seeking business interruption coverage under the property insurance Policy for its economic losses during the closure.

¶4 Nation filed a motion for partial summary judgment on business interruption coverage. Nation contended that the closure of its properties was a fortuitous event causing the loss of use of its properties, amounting to a "direct physical loss" as covered by the Policy.

¶5 Insurers opposed this motion, arguing that the Policy did not provide coverage for Nation's alleged losses because it did not sustain "direct physical loss or damage" to its properties and the district court did not have to consider the Policy's exclusions. Insurers contended that business interruption coverage occurs only during the restoration period that consists of the rebuilding, repairing, or replacing of an insured's damaged or lost property. Insurers urged that Nation did not suffer a "direct physical loss or damage . . . to real and/or personal property" that required any rebuilding, repairing, or replacing, but instead Nation merely did not use its properties for a temporary period of time.

¶6 The district court granted Nation's motion for partial summary judgment, finding coverage for Nation's alleged losses under the Policy's business interruption provision. The district court considered that Insurers did not define the phrase "direct physical loss or damage" in their policies and held that coverage for "direct physical loss" included losses sustained from property rendered unusable for its intended purpose. The district court also found that none of the exclusions raised by Insurers contemplated "pandemics, or suspected, imminent, threatened, or fear of viruses"--common language utilized by carriers to clearly exclude such losses. The district court concluded the exclusions did not apply to Nation's loss. Insurers appealed, and we retained the appeal.

¶7 The issue before this Court is whether the district court in finding coverage for Nation's alleged loss, correctly determined that the phrase "direct physical loss or damage" included coverage for losses sustained by property that was unusable for its intended purpose. We hold the phrase "direct physical loss or damage" does not include coverage for merely loss of use of property. Instead, the phrase "direct physical loss or damage . . . to real and/or personal property" requires immediate and actual, material, or tangible deprivation or destruction of property. Govinda, LLC v. Columbia Mut. Ins. Co., 545 F. SupP.3d 1167, 1172 (W.D. Okla. 2021) (applying Oklahoma law) (citing Goodwill Indus. of Cent. Okla., Inc. v. Phila. Indem. Ins. Co., 499 F. SupP.3d 1098, 1102-03 (W.D. Okla. 2020)). Nation does not present any evidence that its property was tangibly damaged or destroyed. The Policy does not cover its alleged loss, and we reject Nation's invitation to expand business interruption coverage under the facts of this case.

STANDARD OF REVIEW

¶8 Summary judgment resolves issues of law, and we review a district court's grant of summary judgment de novo. U.S. Bank, N.A. ex rel. Credit Suisse First Boston Heat 2005--4 v. Alexander, 2012 OK 43280 P.3d 936de novo standard, we subject the record to a new and independent examination without regard to the district court's reasoning or result. Gladstone v. Bartlesville Indep. Sch. Dist. No. 30, 2003 OK 3066 P.3d 442State ex rel. Protective Health Servs. State Dep't of Health v. Vaughn, 2009 OK 61222 P.3d 1058U.S. Bank, 2012 OK 43

¶9 The interpretation of an insurance policy is a question of law, reviewed de novo. May v. Mid-Century Insurance Company, 2006 OK 100151 P.3d 13215 O.S.2021, ch. 3, § 157 Bituminous Cas. Corp. v. Cowen Constr., Inc., 2002 OK 34¶ 9, 55 P.3d 1030

DISCUSSION

¶10 The foremost principle in Oklahoma law governing insurance coverage disputes is that an insurance policy is a contract. Am. Econ. Ins. Co. v. Bogdahn, 2004 OK 989 P.3d 1051Bituminous Cas. Corp., 2002 OK 34¶ 9, 55 P.3d at 1033. The Court will also not indulge in forced or constrained interpretations to create and then construe ambiguities in insurance contracts. An insurance contract is ambiguous only if it is susceptible to two constructions on its face from the standpoint of a reasonably prudent layperson. Haworth v. Jantzen, 2006 OK 35172 P.3d 193

¶11 Nation focuses its argument for business interruption coverage mainly on the "Perils Covered" general conditions of the Policy, arguing that the scope of coverage for its losses is against "all risk of direct physical loss or damage."covered loss under an all-risk policy, not just that it suffered a fortuitous loss. Okla. Schs. Risk Mgmt. Trust v. McAlester Pub. Schs., 2019 OK 3457 P.3d 997property of every description both real and personal" of the insured.

¶12 The "Perils Covered" provision must also be read in connection with the business interruption provision, under which Nation seeks coverage for its economic losses. The business interruption provision states in pertinent part:

Subject to the terms, conditions and exclusions stated elsewhere herein, this Policy provides coverage for:

A. COVERAGE

1. BUSINESS INTERRUPTION 

Against loss resulting directly from interruption of business, services or rental value caused by direct physical loss or damage, as covered by this Policy to real and/or personal property insured by this Policy, occurring during the term of this Policy.

¶13 The plain language of the policy covers only those business interruption losses caused by "direct physical loss or damage . . . to real and/or personal property." The Policy does not define "direct physical loss or damage." However, policy language is not ambiguous simply because the policy fails to define a term. Cranfill v. Aetna Life Ins. Co., 2002 OK 2649 P.3d 703 See, e.g., U.S. Fid. & Guar. Co. v. Briscoe, 1951 OK 386239 P.2d 754

Direct: "proceeding from one point to another in time or space without deviation or interruption" and "stemming immediately from a source."

Physical: "having material existence," and "of or relating to material things," and "natural; tangible concrete."

Loss: "destruction or ruin" and "failure to keep possession: deprivation."

Damage: "loss or harm resulting from injury."

 

¶14 The common usage of the term "damage" is a lesser harm than "loss." However, both "loss" and "damage" to property under the Policy must be "physical," which means "material" or "tangible." See Ascent Hospitality Mgmt. Co. v. Emp'rs Ins. Co. of Wausau, 537 F. SupP.3d 1282, 1287 (N.D. Ala. 2021).

¶15 Synthesizing these definitions, "direct physical loss or damage . . . to real and/or personal property" is the immediate and actual, material, or tangible deprivation or destruction of property. See Goodwill Indus. of Cent. Okla., Inc. v. Phila. Indem. Ins. Co., 21 F.4th 704, 710-11 (10th Cir. 2021) (applying Oklahoma law) (holding a "direct physical loss" requires immediate and perceptible destruction or deprivation of property); Govinda, LLC, 545 F. SupP.3d at 1172 (applying Oklahoma law) (holding a "direct physical loss" results from an actual or material deprivation of the plaintiff's property). In other words, the Policy covers only those business interruption losses caused by actual tangible deprivation or destruction of property. The definition of "direct physical loss or damage . . . to real and/or personal property" precludes those intangible losses involving detrimental economic impact unaccompanied by a "distinct, demonstrable, physical damage to property." See, e.g., Diesel Barbershop, LLC v. State Farm Lloyds, 479 F. SupP.3d 353, 360 (W.D. Tex. 2020). To adopt Nation's interpretation of "direct physical loss or damage" would render the term "physical" meaningless. Govinda, LLC, 545 F. SupP.3d at 117.

¶16 Nearly all jurisdictions deciding this issue in the context of COVID-19 business interruption claims have found that "direct physical loss or damage" is not ambiguous and upheld almost identical interpretations of the phrase.

¶17 The Policy's "period of restoration" provision also supports that business interruption coverage requires actual, tangible deprivation or destruction of property. Under the Policy, Insurers only pay for business interruption losses during the "period of restoration," which is the time period where the "direct physical loss or damage" is rebuilt, repaired, or replaced.See Goodwill Indus. of Cent. Okla., Inc., 21 F.4th at 711 (holding that the policy covered only "direct physical loss of or damage to" property that could be remedied by the physical acts of repairing, rebuilding, or replacing the affected property); Govinda, LLC, 545 F. SupP.3d at 1173-74 (holding that the "period of restoration" provision reinforced the conclusion that the policy covered only tangible damage or loss).

¶18 To satisfy the rebuilding, repairing, or replacement requirement of the business interruption provision, the district court held that Nation "repaired" its properties by implementing various COVID-19 mitigation protocols and modifications, such as installing acrylic barriers and sanitation stations, staggering seating and gaming machines, and replacing air filters. We reject this conclusion. Other jurisdictions have held that cleaning or employing minor remediation or preventative measures to decrease the spread of COVID-19 does not constitute direct physical damage or loss of property. See, e.g., L&J Mattson's Co. v. Cincinnati Ins. Co., 536 F. SupP.3d 307, 315 n.3 (N.D. Ill. 2021) (holding that additions such as plexiglass, hand sanitizer, air purifiers, or improved HVAC systems "do not constitute repairs to damaged property where a plaintiff has not alleged actual damage to property" but "constitute improvements to stop the spread of virus from one person to another"); Café La Trova LLC v. Aspen Specialty Ins. Co., 519 F. SupP.3d 1167, 1182 (S.D. Fla. 2021) (holding that the "rearranging of furniture and installation of partitions cannot 'reasonably be described as repairing, rebuilding, or replacing'" and cannot constitute "the very 'damage' the plaintiff now asserts is sufficient to invoke coverage"); Independence Rest. Grp. v. Certain Underwriters at Lloyd's, London, 513 F. SupP.3d 525, 534-35 (E.D. Pa. 2021) (ruling that moving equipment and adding plexiglass to make the property "functional and reasonably safe for patrons" cannot reasonably be described as repairing, rebuilding, or replacing). We follow those jurisdictions and conclude Nation's implementations constitute measures to stop the spread of the virus from one person to another, not repairs to or replacement of damaged or lost property.

¶19 Even more, Nation admitted that its own "preemptive" actions triggered the business interruption at issue instead of demonstrating a physical loss or damage to its property. It voluntarily closed its businesses to prevent harm to its property; it was not forced to close due to contamination of the virus or by any emergency order regarding COVID-19. Under the district court's expansive approach, a business could unilaterally decide to close its business for a myriad of reasons and recover under a business interruption provision without proving any physical loss or damage. Such an approach is an unreasonable expansion of the Policy's business interruption coverage.

¶20 The phrase "direct physical loss or damage . . . to real and/or personal property" is not ambiguous, and Insurers' proffered interpretation that the Policy covers those business interruption losses caused by actual tangible deprivation or destruction of property is the only reasonable one. Nation does not allege or present any evidence that its property was tangibly damaged, whether in part or in full. The Policy does not cover this loss.

 

CONCLUSION

 

¶21 Nation did not contract for coverage for its alleged losses. Instead, it contracted for business interruption coverage based on a tangible loss or damage to property. Nation does not present any evidence that its property was tangibly damaged or destroyed but only that it chose to temporarily not use its properties. This Court cannot rewrite the Policy and expand coverage for losses that fall outside the plain and unambiguous terms of the insurance contract. Nation's alleged losses are not covered under the Policy's business interruption provision, and the district court erred in finding coverage when Nation did not sustain actual, tangible deprivation or damage to property.

DISTRICT COURT'S JUDGMENT REVERSED AND REMANDED FOR 
PROCEEDINGS CONSISTENT WITH THIS OPINION.

Darby, C.J., Kane, V.C.J., Winchester, Rowe, and Kuehn, JJ., and Prince, S.J., concur.

Edmondson (by separate writing), Combs, and Gurich, JJ., dissent.

Kauger, J., disqualified.

FOOTNOTES

Tribal First Policy Wording 24, Aug. 17, 2020.

A. COVERAGE

Subject to the terms, conditions and exclusions hereinafter contained, this Policy insures all property of every description both real and personal (including improvements, betterments and remodeling), of the Named Insured or property of others in the care, custody or control of the Named Insured, for which the Named Insured is liable or under obligation to insure.

ROA, Doc. 14, Nation's First Mot. for Partial Summ. J. on Bus. Interruption Coverage, Ex. 5, Tribal First Policy Wording 9, Aug. 17, 2020.

Tribal First Policy Wording 19, Aug. 17, 2020.

Direct, Meriam-Webster.Com Dictionary (2022), available at www.merriam-webster.com/dictionary/direct.

Damage, Meriam-Webster.Com Dictionary (2022), available at www.merriam-webster.com/dictionary/damage.

See SAS Int'l, Ltd. v. Gen. Star Indem. Co., No. 12-1219, --- F.4th ---, 2022 WL 1818115 (1st Cir. 2022) (concluding "direct physical loss" requires physical damage, rather than just mere loss of use, under Massachusetts law);10012 Holdings, Inc. v. Sentinel Ins. Co., 21 F.4th 216 (2d. Cir. 2021) (same, under New York law); Uncork & Create LLC v. Cincinnati Ins. Co., 27 F.4th 926 (4th Cir. 2022) (same, under West Virginia law); Q Clothier New Orleans, LLC v. Twin City Fire Ins. Co., 29 F.4th 252 (5th Cir. 2022) (same, under Louisiana law); Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co., 22 F.4th 450 (5th Cir. 2022) (same, under Texas law); Estes v. Cincinnati Ins. Co., 23 F.4th 695 (6th Cir. 2022) (same, under Kentucky law); Brown Jug, Inc. v. Cincinnati Ins. Co., 27 F.4th 398 (6th Cir. 2022) (same, under Michigan law); Santo's Italian Café LLC v. Acuity Ins. Co., 15 F.4th 398 (6th Cir. 2021) (same, under Ohio law); Sandy Point Dental, P.C. v. Cincinnati Ins. Co., 20 F.4th 327 (7th Cir. 2021) (same, under Illinois law); Paradigm Care & Enrichment Ctr., LLC v. W. Bend Mut. Ins. Co., 33 F.4th 417 (7th Cir. 2022) (same, under Wisconsin law); Planet Sub Holdings, Inc. v. State Auto Prop. & Cas. Ins. Co., --- F.4th ---, 2022 WL 1951615 (8th Cir. 2022) (same, under Kansas, Missouri, and Oklahoma law); Monday Rests. v. Intrepid Ins. Co., 32 F.4th 656 (8th Cir. 2022) (same, under Missouri law); Oral Surgeons, P.C. v. Cincinnati Ins. Co., 2 F.4th 1141 (8th Cir. 2021) (same, under Iowa law); Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am., 15 F.4th 885 (9th Cir. 2021) (same, under California law); Goodwill Indus. of Cent. Okla., Inc., 21 F.4th at 710-12 (10th Cir. 2021) (same, under Oklahoma law); SA Palm Beach, LLC v. Certain Underwriters at Lloyd's London, 32 F.4th 1347 (11th Cir. 2022) (same, under Florida law); Henry's La. Grill, Inc. v. Allied Ins. Co. of Am., --- F.4th ---, 2022 WL 1815874 (11th Cir. 2022) (same, under Georgia law); Ascent Hospitality Mgmt. Co., 537 F. SupP.3d at 1287 (N.D. Ala. 2021) (concluding that both loss or damage to property must be physical, under Alabama law); Pappy's Barber Shops, Inc. v. Farmers Grp., Inc., 487 F. SupP.3d 937 (S.D. Cal. 2020) (rejecting insureds' argument that direct physical loss does not require tangible damage and holding physical loss or damage occurs only when property undergoes a "distinct, demonstrable, physical alteration," under California law); Lisette Enter., Ltd. v. Regent Ins. Co., 537 F. SupP.3d 1038 (S.D. Iowa 2021) (holding the restaurant that was closed to in-person dining during the pandemic failed to allege a tangible loss or alteration of property for coverage under business income provision, under Iowa law); United Talent Agency v. Vigilant Ins. Co., 293 Cal. Rptr. 3d 65 (Ct. App. 2022) (holding allegations of loss of use of insured premises were insufficient to establish "direct physical loss or damage," under California law); Commodore, Inc. v. Certain Underwriters of Lloyd's London, --- So. 3d ---, 2022 WL 1481776 (Fla. Dist. Ct. App. May 11, 2022) (under Florida law); Sweet Berry Café, Inc. v. Society Ins., Inc., 2022 IL App (2d) 210088, --- N.E.3d --- (App. Ct. Mar. 15, 2022) (under Illinois law); Ind. Repertory Theatre v. Cincinnati Cas. Co., 180 N.E.3d 403 (Ind. Ct. App. 2022) (holding policy did not provide coverage because the theater did not suffer physical loss or damage, under Indiana law); Jesse's Embers, LLC v. W. Agric. Ins. Co., 973 N.W.2d 507 (Iowa 2022) (under Iowa law); GPL Enter., LLC v. Certain Underwriters at Lloyds, No. 302, --- A.3d ---, 2022 WL 1638787 (Md. Ct. Spec. App. 2022) (holding term "physical" clearly indicated that the damage must affect the property itself, under Maryland law); Verveine Corp. v. Strathmore Ins. Co., 184 N.E.3d 1266 (Mass. 2022) (concluding that "direct physical loss of or damage to" property requires some "distinct, demonstrable, physical alteration of the property," under Massachusetts law); MAC Prop. Grp. LLC v. Selective Fire & Cas. Ins. Co., No. A-0714-20, --- A.3d ---, 2022 WL 2196396 (N.J. Super. Ct. App. Div. 2022) (under New Jersey law); Consol. Rest. Operations, Inc. v. Westport Ins. Corp., 167 N.Y.S.3d 15 (N.Y. App. Div. 2021) (under New York law); North State Deli, LLC v. Cincinnati Ins. Co., --- S.E.2d ---, 2022 WL 2432157 (N.C. Ct. App. 2022) (under North Carolina law); Nail Nook, Inc. v. Hiscox Ins. Co., 182 N.E.3d 356 (Ohio Ct. App. 2021) (under Ohio law); Sullivan Mgmt., LLC v. Fireman's Fund Ins. Co., No. 2021-001209, --- S.E.2d ---, 2022 WL 3221920 (S.C. 2022) (under South Carolina law) ("Because neither the presence of the coronavirus nor the government order prohibiting indoor dining constitutes 'direct physical loss or damage,' the policy's triggering language is not met."); Hill & Stout, PLLC v. Mut. of Enumclaw Ins. Co., 515 P.3d ---, 2022 WL 3651805 (Wash. 2022) (under Washington law) Colectivo Coffee Roasters, Inc. v. Soc'y Ins., 975 N.W.2d 442 (Wis. 2022) (under Wisconsin law); see also Abbey Hotel Acquisition, LLC v. Nat'l Sur. Corp., No. 21-2609, 2022 WL 1697198 (2d Cir. May 27, 2022) (summ. order) (unpublished) (under Florida law); Bel Air Auto Auction, Inc. v. Great N. Ins. Co., No. 21-1493, 2022 WL 2128586 (4th Cir. June 14, 2022) (per curiam) (unpublished) (under Maryland law); Summit Hospitality Grp., Ltd. v. Cincinnati Ins. Co., No. 21-1362, 2022 WL 2072759 (4th Cir. June 9, 2022) (per curiam) (unpublished) (under North Carolina law); Glen R. Edwards, Inc. v. Travelers Cas. Ins., No. 21-3035, 2022 WL 1510818 (8th Cir. May 13, 2022) (per curiam) (unpublished) (under Missouri law); United Hebrew Congregation of St. Louis v. Selective Ins. Co. of Am., No. 21-2752, 2022 WL 1013984 (8th Cir. Apr. 5, 2022) (per curiam) (unpublished) (under Missouri law); Circus Circus LV, LP v. AIG Specialty Ins. Co., No. 21-15367, 2022 WL 1125663 (9th Cir. Apr. 15, 2022) (mem.) (unpublished) (under Nevada law); Levy Ad Grp., Inc. v. Fed. Ins. Co., No. 21-15413, 2022 WL 816927 (9th Cir. Mar. 17, 2022) (mem.) (unpublished) (under Nevada law); Gilreath Fam. & Cosm. Dentistry, Inc. v. Cincinnati Ins. Co., No. 21-11046, 2021 WL 3870697 (11th Cir. Aug. 31, 2021) (per curium) (unpublished) (holding that neither the state's shelter in place orders nor any alleged COVID-19 particles in the air caused physical damage necessary to recover under the policy, under Georgia law); 10E, LLC v. Travelers Indem. Co. of Connecticut, No. 2:20-cv-04418-SVW-AS, 2020 WL 5359653 (C.D. Cal. Sept. 2, 2020) (summ. ord.) (unpublished) (holding physical loss or damage occurs only when property undergoes a distinct, demonstrable, physical alteration and detrimental economic impact does not suffice, under California law); Malaube, LLC v. Greenwood Ins. Co., No. 20-22615-CIV-Williams/Torres, 2020 WL 5051581 (S.D. Fla. Aug. 26, 2020) (summ. ord.) (unpublished) (explaining a direct physical loss contemplates an actual change in insured property causing it to become unsatisfactory for future use or requiring that repairs be made, under Florida law); Turek Enter., Inc. v. State Farm Mut. Auto. Ins. Co., No. 20-11655, 2020 WL 5258484 (E.D. Mich. Sept. 3, 2020) (summ. ord.) (unpublished) (holding direct physical loss requires a plaintiff to demonstrate some tangible damage to property, under Michigan law); Del. Valley Mgmt., LLC v. Cont'l. Cas. Co., No. 2:20-cv-4309, 2021 WL 5235277 (E.D. Pa. Nov. 10, 2021) (mem.) (unpublished) (concluding that insureds' partial loss of use of their facilities did not constitute physical damage or loss, under Pennsylvania law); Rose's 1, LLC v. Erie Ins. Exch., No. 2020 CA 002424 B, 2020 WL 4589206 (D.C. Super. Ct. Aug. 6, 2020) (sum. ord.) (unpublished) (holding the words "direct" and "physical" modify the word "loss" and "direct physical loss" requires a "direct physical intrusion on to the insured property," under D.C. law); Gavrilides Mgmt. Co., LLC v. Mich. Ins. Co., No. 354418, 2022 WL 301555 (Mich. Ct. App. February 1, 2022) (per curiam) (unpublished) (holding insureds did not suffer "direct physical loss of or damage to property" as a result of government shutdown orders during COVID-19, under Michigan law); Four Roses, LLC v. First Prot. Ins. Co., No. COA21-427, 2022 WL 2813270 (N.C. Ct. App. July 19, 2022) (unpublished); Crescent Hotels & Resorts, LLC v. Zurich Am. Ins. Co., No. 211074, slip op. at 1 (Va. Apr. 14, 2022) (refusing to review a lower court's dismissal of a policyholder's COVID-related business interruption claim because, "[u]pon review of the record in this case and consideration of the argument submitted in support of and in opposition to the granting of appeal, the court is of the opinion there is no reversible error in the judgment complained of"), available at https://www.phelps.com/a/web/nRzydP9Xk3qBCa2LVUittC/1484000-1484340-order.pdf.

See Colony Ins. Co. v. Jackson, No. 09-CV-780-TCK-TLW, 2011 WL 2118728, at * 3 (N.D. Okla. May 27, 2011) (unpublished).

"during the period of restoration," which is defined as follows:

A. COVERAGE

. . . 

5. PERIOD OF RESTORATION 

The period during which business interruption and or rental interruption applies will begin on the date direct physical loss occurs and interrupts normal business operations and ends on the date that the damaged property should have been repaired, rebuilt or replaced with due diligence and dispatch, but not limited by the expiration of this policy.

ROA, Nation's First Mot. for Partial Summ. J. on Bus. Interruption Coverage, Ex. 5, Tribal First Policy Wording 23, Aug. 17, 2020.

Steadfast Ins. Co. v. Agric. Ins. Co., 2013 OK 63304 P.3d 747

 

 

Edmondson, J., with whom Combs and Gurich, JJ., join dissenting:

¶1 January 2020 saw a novel coronavirus become a global pandemic, the worst health crisis in a century. On March 15, the Governor declared a state of emergency and nonessential businesses were ordered to close. The greatest shock to our economy since the Great Depression was underway. By January 2021, four hundred thousand Americans had died of COVID-19, more than twenty-four million infected. Within a few days of the Governor's order, the Nation closed its businesses for remodeling and repairs to implement public health measures; then it submitted a claim under its 2019 business interruption insurance policy. The claim was denied. The day after suit was filed the primary insurer added an exclusion to the policy to bar any claim based on imminent health hazards.

¶2 Before today's decision, an all risk business interruption insurance policy -- lacking a definition or exclusion to the contrary -- would provide coverage, as the District Court held.

¶3 Noting the disjunctive phrasing of loss or damage, it would have been logical to reason they have different meanings. To find that "physical loss" means "physical damage" would render one term or the other redundant.

¶4 To consult Merriam-Webster -- a useful fountain of ambiguities -- interpretations of "loss" other than physical damage are discoverable in a variety of contexts: disadvantage, deprivation, missing, captured, unavailable, unusable, to name a few. An example given in Webster's New World Dictionary, Third College Edition of American English, Simon and Schuster (1988), is "so as to lose money (to operate a business at a loss).

¶5 Examining the whole policy to discern the meaning of any disputed part is standard. However, Lexington's "Period of Restoration" clause which provides what it will cover should not dictate what it will not cover.

¶6 Uncertainty existing where language employed is capable of more than one meaning, thus rendering the policy patently ambiguous, the Nation then takes the burden and is entitled to show its expectation of coverage is reasonable.

¶7 Supposedly, a first impression case is before us, and so it is, at least in the heat of a pandemic (the likelihood of which Lloyds has been warning the insurance industry since 2008 in Pandemic: Potential Insurance Impacts, stating as noted by the District Court that business interruption coverage needed to be carefully drafted by carriers because a "pandemic is inevitable"). And the great mass of post-COVID federal cases cited by the majority constitutes the present majority opinion of other jurisdictions.

¶8 While these points are conceded, I respectfully dissent to the conclusions that the policy in this case is unambiguous and non-coverage of the Nation's claim is the only reasonable interpretation. These conclusions effectively give the armor of a named perils policy to an all risks policy which is devoid of pertinent definitions and exclusions, and convert a business interruption insurance policy into nothing more than fire insurance.

¶9 At the very least, the remand should be clear that the Nation be given a full opportunity to present its defenses.

FOOTNOTES

Western Fire Ins. Co. v. First Presbyterian Church, 165 Colo. 34, 437 P.2d 52 (1968), the insured/church was deprived of their property when the fire department, a regulatory authority, closed its facilities due to risk of harm and danger from contamination by gasoline fumes around and infiltration of the property. Insurance company denied coverage urging that there was no "direct physical loss" because the church building had not been permanently damaged and had no tangible damage. The court disagreed, and found unequivocally that the church suffered a direct loss of its property when the fire marshal closed the church for the safety and well-being of the community, meeting its burden to establish coverage; See also, Se. Mental Health Ctr., Inc. v. Pac. Ins. Co., 439 F. SupP.2d 831, 838 (W.D. Tenn. 2006) ("direct physical damage" in an all-risk policy includes "loss of use" as well as "loss of access" under business interruption coverage); Burdett Oxygen Co. of Cleveland, Inc. v. Employers Surplus Lines Ins. Co., 419 F.2d 247 (6th Cir. 1969) (when interpreting an insurance policy "the language of the parties should be given its plain and ordinary meaning); The Phoenix Ins. Co. v. Infogroup, Inc., 147 F. SupP.3d 815, 830 (S.D. Iowa 2015) ("'loss" is defined as the 'act of losing possession,' or 'an instance of losing.'" Merriam Webster, available at http://www.merriam-webster.com/dictionary/loss. Therefore a 'loss' denotes the deprivation of something of value or being unable to possess the item of value."); (business interruption coverage can be triggered without tangible structural harm to property; "direct physical loss or damage" is established if the property is unusable to the policy holder): See, Schlamm, Stone & Dolan LLP v. Seneca Ins. Co., 800 N.Y.S.2d 356 (Sup. Ct. 2005) (losses caused by noxious particles post 9/11 World Trade Center disaster constitute "direct physical loss or damage" and are covered); Am. All. Ins. Co. v. Keleket X-Ray Corp., 248 F. 2d 920, 925 (6th Cir. 1957) (contamination with radioactive dust and radon gas and removal process to decontaminate was similar to fire restoration and a covered event under business interruption coverage); Azalea, Ltd. v. Am. States Ins. Co., 656 So.2d 600, 602 (Fla. Dist. Ct. App. 1995) (release of unknown substance in sewage treatment plant destroying bacteria colony causing plant shutdowns constituted "direct damage to the structure" constituting "direct physical loss" to the sewage treatment facility); (physical damage does not have to be permanent to trigger coverage, imminent threat of physical loss or damage is sufficient): See, Sloan v. Phoenix of Hartford Ins. Co., 207 N.W.2d 434, 437, (Ct. App. Mich. 1973) (loss of use due to government shutdown in response to impending riots is covered even though no direct damage to property); Hampton Foods, Inc. v. Aetna Cas. & Sur. Co., 787 F.2d 349, 352 (8th Cir. 1986) (coverage arises with imminent threat of loss and established by evacuation from an imminent building collapse); Port. Auth. v. Affiliated FM Ins. Co., 311 F.3d 226, 236 (3d Cir. 2002) (imminent threat of release of asbestos fibers was sufficient to establish a loss and find coverage).

Crown Energy Co. v. Mid-Continent Casualty Co., 2022 OK 60511 P.3d 1064