OSCN Found Document:FLORETTA FRANKLIN, as mother and next of kin to LATOYA PERRY v. OU MEDICINE, et al.

 

 
 FLORETTA FRANKLIN, as mother and next of kin to LATOYA PERRY v. OU MEDICINE, et al.2025 OK 84Case Number: 122030Decided: 11/18/2025THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2025 OK 84, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

FLORETTA FRANKLIN, as mother and next of kin to LATOYA O. PERRY, Plaintiff/Appellant,
v.
OU MEDICINE, INC., OU HEALTH PARTNERS, INC., and TEENA BERGDALL, R.N., Defendants/Appellees.

ON WRIT OF CERTIORARI TO THE OKLAHOMA COURT OF CIVIL APPEALS, DIVISION IV

¶0 Following a split decision in the Court of Civil Appeals, Defendants sought certiorari review regarding subject matter jurisdiction and the scope of the U.S. Public Readiness and Emergency Preparation (PREP) Act's targeted liability protections. 42 U.S.C. § 247d-6d. We granted certiorari to determine whether the district court properly dismissed the case for lack of subject matter jurisdiction pursuant to PREP Act immunity.

OPINION OF THE COURT OF CIVIL APPEALS VACATED; TRIAL COURT'S JUDGMENT AFFIRMED.

Dan L. Holloway, Kenyatta R. Bethea, Chanda R. Graham, Holloway, Bethea & Others, PLLC, Oklahoma City, Oklahoma, for Plaintiff/Appellant.

Alexandra Ah Loy, Zachary E. Williams, Hall Booth Smith, P.C., Oklahoma City, Oklahoma, and Teresa Pike Tomlinson (pro hac vice), Hall Booth Smith, P.C., Columbus, Georgia, for Defendant/Appellee OU Medicine.

Daniel J. Thompson, Rachel S. Wyatt, Wiggins Sewell & Ogletree, Oklahoma City, Oklahoma, for Defendant/Appellee Teena Bergdall, R.N.

JETT, J.:

¶1 This case is about the scope of immunity bestowed by Congress pursuant to the U.S. Public Readiness and Emergency Preparation (PREP) Act. 42 U.S.C. § 247d-6d. Plaintiff's claims for loss were "caused by, arising out of, relating to, or resulting from" the administration and use of a covered countermeasure. Id. § 247d-6d(a)(1). Immunity applies because Plaintiff's claims have "a causal relationship with the administration to or use by an individual of a covered countermeasure . . . ." Id. § 247d-6d(a)(2)(B). But for Congress' enactment of immunity, Plaintiff would undoubtedly state a claim for relief in this case. However, we are obliged to apply statutes without second-guessing the wisdom of legislative policy decisions. Since the PREP Act confers both immunity from liability and immunity from suit, Oklahoma courts lack subject matter jurisdiction to adjudicate the claims in Plaintiff's petition.

I.

¶2 Plaintiff Floretta Franklin (Franklin) sued Defendants OU Medicine, Inc., OU Health Partners, Inc. (collectively, OU), 

¶3 According to Plaintiff's petition, Bergdall is a registered nurse who worked for OU at all times relevant to this case. Perry presented for treatment at OU Medical Center. According to the Petition, Bergdall was cleaning Perry when "Bergdall dislodged the tracheotomy [sic] to the point that it fell out." (ROA, Doc. 1, Pet. ¶ 11.) Plaintiff alleges Bergdall "did nothing, nor did she call for assistance." (Id.) The evidence submitted by Defendants indicates the tracheostomy was dislodged for approximately seven minutes. (ROA, Doc. 8, Ex. 1 to Defs.' Joint Reply to Pl.'s Resp. to Defs.' Mot. to Dismiss (Defs.' Joint Reply) at *8.) "Due to the length of time the tracheotomy [sic] was out, [Perry] suffered an anoxic brain injury and coded." (Pet. ¶ 11.)

¶4 OU and Bergdall filed a joint motion to dismiss arguing they were immune from suit and liability pursuant to the PREP Act. According to OU and Bergdall, the PREP Act's provision of immunity from suit deprives the district court of subject matter jurisdiction to adjudicate Plaintiff's claims.

¶5 OU and Bergdall submitted documentary evidence to support PREP Act immunity. According to the evidence submitted by Defendants, Perry was admitted to OU Medical Center with severe "SARS cov2 infection" and "COVID pneumonia" on September 4, 2021. (Ex. 1 to Defs.' Joint Reply at *1.) Perry presented with an uncuffed tracheostomy, which she had been dependent upon since she was two years old. Perry had a very small, but well formed, opening (or stoma), which allowed for the use of the tracheostomy. An ear, nose, and throat specialist (ENT) recommended against stoma revision while Perry had COVID pneumonia.

¶6 On September 5, 2021, an ENT exchanged Perry's uncuffed tracheostomy for a cuffed tracheostomy secondary to the anticipated need for mechanical ventilation. It appears that Perry was first placed on a mechanical ventilator on September 6. According to a note from Perry's medical record, that day Franklin told medical staff that she would like to discontinue the mechanical ventilator and exchange Perry's cuffed trach for her usual uncuffed trach and HFNC (High-Flow Nasal Cannula). The note indicates Franklin was "very upset and worried because the current [cuffed] trach keeps popping out of the stoma and [Perry] seems very uncomfortable . . . ." (Ex. 1 to Defs.' Joint Reply at *3.)

¶7 The attending physician explained the medical purpose of the ventilator. She also "offered multiple alternative solutions including exchanging the current cuffed trach for a longer ETT [endotracheal tube] that may not pop out of stoma as often and/or also increasing [Perry's] sedation to make her more comfortable. [Franklin] adamently [sic] declined both of those options." (Id.)

¶8 The physician ultimately complied with Franklin's request and changed the cuffed tracheostomy for the uncuffed tracheostomy and transitioned back to the HFNC for oxygenation. However, according to the medical record the doctor ordered that "[t]he removed cuffed trach should remain at bedside at all times in case of emergency necessitating re-exchange and mechanical ventilation again." (Id.)

¶9 Overnight, Perry "became tachypnic with dropping [oxygen] saturations." (Id. at *5.) The medical record states: "[Franklin] now ok with restarting the ventilator with cuffed tracheostomy tube." (Id.) In the early morning hours of September 7, hospital staffed replaced the uncuffed tracheostomy with a cuffed tracheostomy and placed Perry on the ventilator.

¶10 On September 18, Perry's cuffed tracheostomy was still in place and she was "off vent[ilator] on 9/18/2021 but still requiring high flow O2 support." (Id. at *6.)

¶11 At approximately 11:10 AM on September 19, 2021, Perry was transported to radiology for a swallow evaluation. Perry was being administered oxygen via a tracheostomy collar at that time: "PT ON PORTIBLE MONITOR AND 10L VIA TRACH COLLAR . . . ." (Id. at *9.)

¶12 At approximately noon Perry was back in her room after visiting radiology. "The nurse was turning the patient to the left to clean up a bowel movement and the patient became unresponsive with no palpable pulse." (Id. at *8.) Perry "was being turned with the tracheostomy being dislodged." (Id. at *1.) Perry went into cardiac arrest due to acute hypoxia after the tracheostomy dislodgement.

¶13 Perry "was unable to be bagged initially due to pediatric sized trach getting dislodged and no [sic] allowing for a secure airway." (Id. at *8.) "Once trach was secured the patient was able to be ventilated and oxygenated." (Id.) The medical team achieved the return of a heartbeat in approximately seven minutes. (Id.)

¶14 Shortly after this event, Perry was placed back on a ventilator. Upon discharge, Perry was ventilator dependent. She had suffered acute anoxic encephalopathy.

¶15 Plaintiff opposed Defendants' motion to dismiss but did not submit any evidentiary material contesting the evidence submitted by Defendants. After the matter was fully briefed, the district court held a hearing on the motion to dismiss. Neither Plaintiff nor Defendants put on any evidence at the hearing. After the hearing, the district court entered an order dismissing the case for lack of subject matter jurisdiction based on the immunity conferred by the PREP Act.

¶16 Plaintiff appealed. In a split decision, the Court of Civil Appeals reversed the holding that the trial court had subject matter jurisdiction and the Defendants were not immune from suit.

II.

¶17 This case is an appeal from a district court order granting a motion to dismiss for lack of subject matter jurisdiction. A dismissal for lack of subject matter jurisdiction is reviewed de novo. Crawford v. OSU Med. Tr., 2022 OK 25510 P.3d 824

¶18 On appeal, Plaintiff claims factual disputes preclude the district court from granting Defendants' motion to dismiss. Plaintiff also moved to strike certain briefing in the district court, which included documentary evidence provided to support Defendants' immunity argument. At the outset, we must address what allegations and evidence are properly considered to resolve the question of immunity.

¶19 A motion to dismiss for lack of subject matter jurisdiction under 12 O.S. § 2012Berkson v. State ex rel. Askins, 2023 OK 70532 P.3d 36 Baker v. USD 229 Blue Valley, 979 F.3d 866, 872 (10th Cir. 2020). "A facial attack assumes the allegations in the complaint are true and argues they fail to establish jurisdiction." Baker, 979 F.3d at 872. "A factual attack goes beyond the allegations in the complaint and adduces evidence to contest jurisdiction." Id.

¶20 When a district court's subject matter jurisdiction is factually attacked, the court may consider facts outside the pleadings to decide a motion to dismiss unless the resolution of the jurisdictional question is intertwined with the merits. Osage Nation v. Bd. of Comm'rs of Osage Cnty., 2017 OK 34394 P.3d 1224 Lind v. Barnes Tag Agency, Inc., 2018 OK 35418 P.3d 698

¶21 In a factual attack, the district court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts . . . ." Visteon Corp. v. Yazel, 2004 OK CIV APP 5291 P.3d 690see also Berkson, 2023 OK 70Union Bank v. Ferris, 1978 OK 149587 P.2d 454Visteon Corp., 2004 OK CIV APP 52 Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995)).

¶22 To determine if the district court properly considered evidence outside the pleadings, we assess whether the application of PREP Act immunity implicates the district court's subject matter jurisdiction. The PREP Act provides both immunity from liability and immunity from suit for claims that have a "causal relationship with the administration to or use by an individual of a covered countermeasure . . . ." 42 U.S.C. § 247d-6d(a)(1); id. § 247d-6d(a)(2)(B). The "sole exception to the immunity from suit and liability . . . shall be for an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct . . . ." Id. § 247d-6d(d)(1) (emphasis added). For willful misconduct claims, there is "[e]xclusive [f]ederal jurisdiction" such that "[a]ny action . . . shall be filed and maintained only in the United States District Court for the District of Columbia." Id. § 247d-6d(e)(1). For claims that do not involve willful misconduct, injured individuals must seek compensation from the Covered Countermeasure Process Fund. Id. § 247d-6e(a). Importantly, "[t]he remedy provided by subsection (a) [the Covered Countermeasure Process Fund] shall be exclusive of any other civil action or proceeding for any claim or suit this section encompasses . . . ." Id. § 247d-6e(d)(4). 

¶23 Thus, claims that do not implicate willful misconduct must be pursued from the Covered Countermeasure Process Fund, "exclusive of any other civil action," and willful misconduct claims must be pursued exclusively in the U.S. District Court for the District of Columbia. Since Congress established exclusive jurisdiction for these claims, Oklahoma district courts lack subject matter jurisdiction. See Mills v. Hartford Healthcare Corp., 298 A.3d 605 (Conn. 2023) (analyzing PREP Act immunity pursuant to a motion to dismiss for lack of subject matter jurisdiction); see also State ex rel. Ammons v. Breckinridge, 1968 OK 93442 P.2d 506Hampton v. Clendinning, 1966 OK 51416 P.2d 61712 O.S. § 2012

¶24 In this case, Plaintiff makes factual allegations in her petition but has not submitted extrinsic evidence. Defendants, on the other hand, have submitted documentary evidence to support their assertion of immunity. The factual evidence submitted by Defendants does not conflict with the factual allegations in Plaintiff's petition in any way that is material to analyzing PREP Act immunity. The district court properly considered the factual basis set forth in Part I of this opinion to analyze PREP Act immunity even though it includes facts beyond those set forth in Plaintiff's petition.

III.

A.

¶25 Turning to the merits, this case is our first opportunity to apply the PREP Act, 42 U.S.C. §§ 247d--6d & 247d--6e. In 2005, Congress passed the PREP Act to encourage development and deployment of medical countermeasures during a public health emergency by granting immunity relating to their administration and use. Cannon v. Watermark Ret. Cmtys, Inc., 45 F.4th 137, 139 (D.C. Cir. 2022). Immunity is triggered when the U.S. Secretary of Health and Human Services (Secretary) issues a declaration "identifying the threat to public health, the period during which immunity is in effect, and other particulars." Id.; see also 42 U.S.C. § 247d-6d(b). On March 17, 2020, the Secretary issued the requisite declaration in response to the COVID-19 pandemic. Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15198-01 (Mar. 17. 2020). Although the Secretary amended the PREP Act declaration several times, neither party disputes that the declaration had been made and was in effect when Perry was injured.

¶26 The PREP Act provides "a covered person" immunity "from suit and liability" for claims "caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." 42 U.S.C. § 247d-6d(a)(1). PREP Act immunity applies to any claim "that has a causal relationship with the administration to or use by an individual of a covered countermeasure, including a causal relationship with the design, development, clinical testing or investigation, manufacture, labeling, distribution, formulation, packaging, marketing, promotion, sale, purchase, donation, dispensing, prescribing, administration, licensing, or use of such countermeasure." Id. § 247d-6d(a)(2)(B). As noted, if PREP Act immunity applies and there is no allegation of willful misconduct, an injured individual must seek compensation from the Covered Countermeasure Process Fund rather than pursuing a claim in state or federal court. Id. § 247d-6e(a).

B.

¶27 Three things must be true for Bergdall and OU to be immune from Plaintiff's claims: (1) the cuffed tracheostomy must be a "covered countermeasure"; (2) Plaintiff's claim "must have had a causal relationship with the administration to or use by" Perry of a "covered countermeasure"; and (3) Bergdall and OU must be "covered persons" under the PREP Act.

1.

¶28 We conclude that the cuffed tracheostomy provided to Perry is a "covered countermeasure" pursuant to the PREP Act. 42 U.S.C. § 247d-6d(i)(1)(A). Within the definition of "covered countermeasure" is a "qualified pandemic or epidemic product," which includes U.S. Food and Drug Administration (FDA) approved devices used "to diagnose, mitigate, prevent, treat, or cure a pandemic or epidemic . . . ." 42 U.S.C. § 247d-6d(i)(7). A cuffed tracheostomy is approved by the FDA. 21 C.F.R. § 868.5800 (tracheostomy tubes and tube cuffs); id. § 868.5895 (ventilator tubing). It can be used to treat and cure and/or limit the harm of a pandemic. 42 U.S.C. § 247d-6d(i)(7)(A)(i)(I)--(II). A cuffed tracheostomy is a qualified pandemic product and a covered countermeasure. 42 U.S.C. § 247d-6d(i)(1) & (7).

¶29 While Perry initially presented at OU Medical Center with an uncuffed tracheostomy, the record demonstrates that Defendants exchanged her uncuffed tracheostomy for a cuffed tracheostomy to treat Perry's COVID pneumonia. In fact, Perry's mother, Ms. Franklin, specifically consented to transitioning from an uncuffed tracheostomy to a cuffed tracheostomy so Perry could receive ventilator support necessitated by her COVID-19 infection. Even after being weaned from the ventilator, Perry was receiving oxygen via a tracheostomy collar on the day of her injury. The cuffed tracheostomy provided to Perry was a device used to treat the pandemic and/or limit the harm such pandemic might cause notwithstanding the fact she previously had an uncuffed tracheostomy. 42 U.S.C. § 247d-6d(i)(7)(A)(i)(I)--(II) & § 247d-6d(i)(1). Perry's cuffed tracheostomy is a covered countermeasure for purposes of the PREP Act.

2.

¶30 Since the cuffed tracheostomy tube is a covered countermeasure, we must determine whether Plaintiff's claims have "a causal relationship with the administration to or use by an individual of a covered countermeasure, including a causal relationship" with the "dispensing," "administration," "or use of such countermeasure." 42 U.S.C. § 247d-6d(a)(2)(B). Plaintiff's central argument is that Defendants cannot meet this prerequisite for immunity. We disagree.

a.

¶31 Perry was engaged in the use of a covered countermeasure at the time of her injury. The Court of Civil Appeals was mistaken in concluding that because Defendants allegedly caused Perry's cuffed tracheostomy to malfunction, Perry was not engaged in the use of a covered countermeasure. Franklin v. OU Medicine, Inc., No. 122,030, ¶ 10 (Okla. Civ. App. Jan. 9, 2025).

¶32 The PREP Act employs the word "use" as a noun. The primary definition of the noun form of "use" is "the act or practice of employing something . . . ." Use, Merriam-Webster, https://www.merriam-webster.com/dictionary/use (last visited Oct. 28, 2025); see also Cherokee Nation v. Lexington Ins. Co., 2022 OK 71521 P.3d 1261

¶33 Based on the facts and evidence in this case, it is apparent that the cuffed tracheostomy was being employed at the time of Perry's injury. The cuffed tracheostomy had not been removed, and oxygen was being administered to Perry via the tracheostomy collar on the day of the injury. Bergdall's acts and omissions, as alleged, interrupted the effectiveness of the cuffed tracheostomy. But a device can be rendered ineffective and malfunction while someone is engaged in the use of the devise. That is precisely what happened in this case. 

b.

¶34 Defendants administered a countermeasure to Perry. Plaintiff's contention that Perry's dislodged tracheostomy was not being administered at the time she was injured is incorrect.

¶35 The term "administration" is not defined in the PREP Act, so we look to the term's ordinary meaning. Black Emergency Response Team v. Drummond, 2025 OK 44571 P.3d 135Cherokee Nation, 2022 OK 71Administration, Merriam-Webster, https://www.merriam-webster.com/dictionary/ administration (last visited Oct. 28, 2025). Administering means managing and supervising the execution, use, or conduct of. See Administer, Merriam-Webster, https://www.merriam-webster.com/dictionary/administer (last visited Oct. 28, 2025). Thus, the ordinary meaning of administration includes the entire process of managing and supervising Perry's use of COVID countermeasures.

¶36 Consistent with the term's ordinary meaning, other courts have interpreted "administration" of a countermeasure to encompass a broad range of actions. In Maney v. Brown, the Ninth Circuit concluded that "administration" included "activities other than the physical act of directly injecting a particular person with a vaccine." 91 F.4th 1296, 1301 (9th Cir. 2024). Ashley v. Anonymous Physician 1, 245 N.E.3d 658, 2024 WL 4142508, at *1, 4 (Ind. Ct. App. 2024) (unpublished table case). Failing to provide adequate seating, which resulted in a COVID-19 vaccine recipient falling, fell within the scope of administering a countermeasure. Storment v. Walgreen, Co., No. 1:21-CV-00898, 2022 WL 2966607, at *3 (D.N.M. July 27, 2022). Selecting the wrong student to vaccinate for COVID-19 constituted the administration of a countermeasure. Politella v. Windham Se. Sch. Dist., 325 A.3d 88, 95 (Vt. 2024), cert. denied, Politella v. Windham Se. Sch. Dist., 145 S. Ct. 1180 (2025); see also M.T. ex rel. M.K. v. Walmart Stores, Inc., 528 P.3d 1067, 1078 (Kan. Ct. App. 2023) (failing to obtain informed consent from a minor's legal guardian was administration of a covered countermeasure).

¶37 Based on the text of the PREP Act and consistent with the authorities above, we disagree with the Court of Civil Appeals' limitation on the scope of activity encompassed within "administration of . . . a covered countermeasure" in this case. The majority below indicated that immunity would apply if an injury occurred while the tracheostomy was being inserted, shortly thereafter, or because it was negligently installed. Franklin, No. 122,030, ¶ 11. Insertion of a tracheostomy is certainly within the scope of administering a countermeasure, but this is not where administration ends. There is no basis to apply immunity when a defendant negligently causes a countermeasure to fail during installation, but not when a defendant negligently causes a countermeasure's failure later during a patient's COVID illness. Maney, Ashley, Storment, and Politella show PREP Act immunity is not limited solely to the care provided at or near the time Perry's cuffed tracheostomy was installed. Rather, administration includes the entire process of managing and supervising Perry's utilization of COVID countermeasures.

¶38 Defendants conduct falls within the scope of administering a covered countermeasure. The cuffed tracheostomy was installed to allow Perry to receive needed oxygen support due to COVID-19 pneumonia. The tracheostomy allowed Perry to be placed on a mechanical ventilator, and the record demonstrates Perry received oxygen via the tracheostomy collar on the day of her injury. Just before Perry's injury, she had a bowel movement. No one contests that Perry required turning and cleaning even though she was using a cuffed tracheostomy. In fact, not turning patients can create a host of problems. See Ashley, 245 N.E.3d 658, at *1 (alleging providers were negligent for not turning a COVID patient after bed sores developed).

¶39 At the moment Perry was injured, she was utilizing a cuffed tracheostomy, and she required nursing care that could foreseeably, and in fact did, interact with the functionality of the cuffed tracheostomy. On these facts, we conclude Defendants' acts and omissions were part of the entire process of managing and supervising Perry's use of the cuffed tracheostomy. Defendants' care undoubtedly produced a tragic result, but under the definition in the statute, this care is part of administering a covered countermeasure.

¶40 The fact that Plaintiff persuasively alleges that Bergdall acted negligently does not change that Defendants were administering a covered countermeasure when Perry was injured. A defendant's eligibility for immunity turns on whether their acts or omissions fall within the scope of conduct to which immunity applies, not whether their acts or omissions are negligent. Mills, 298 A.3d at 625. To conclude that negligent acts cannot fall within the scope of administering a countermeasure would conflate whether a defendant is immune for the negligent acts with whether they are, in fact, negligent. Id. This would render PREP Act immunity a nullity. "[I]mmunity would never be necessary because a court could not determine that the defendants are entitled to immunity unless it also finds that there is no negligence . . . ." Id. at 623. Even assuming Defendants' acts and omissions are negligent, they still fall within the scope of administering a countermeasure.

c.

¶41 Plaintiff's claim for loss has a causal relationship to Perry's use of the cuffed tracheostomy and Defendants' administration of this countermeasure to Perry. To be clear, we agree with Plaintiff that just because a covered countermeasure has been administered or used during a pandemic does not automatically mean medical providers are immune. Rather, a plaintiff's injury must have a causal relationship to the administration or use of the countermeasure. In this case, the record confirms the existence of the requisite causal relationship.

¶42 Plaintiff's petition demonstrates that dislodgement of the tracheostomy (the countermeasure) was the cause-in-fact of Perry's brain injury.

In the course of cleaning Ms. Perry, Defendant Bergdall dislodged the tracheotomy [sic] to the point that it fell out. Defendant did nothing, nor did she call for assistance. Due to the length of time the tracheotomy was out, Latoya [Perry] suffered an anoxic brain injury and coded.

(Pet. ¶ 11.) The existence of a causal relationship is bolstered by the fact that dislodgement is a plainly foreseeable risk of using and administering a cuffed tracheostomy.

¶43 Decisions from other jurisdictions are persuasive and support our determination that the causal element of immunity is satisfied in this case. In Storment, the plaintiff suffered an injury after falling in a Walgreens' parking lot after receiving a COVID-19 vaccine. 2022 WL 2966607, at *1. The plaintiff felt dizzy after receiving the vaccination and looked for a place to sit in the store. Id. Not finding any seating, she retreated to the parking lot but fell before she could seat herself in her car. Id. The district court noted, "[t]his chain of events is unfortunate and certainly deserving of a remedy, but it cannot be divorced from the administration of a covered countermeasure--the COVID-19 vaccine she received." Id. at *3.

¶44 As in Storment, Defendants' alleged negligence is related to their administration of a countermeasure and how they reacted to Perry once she had a negative interaction with the countermeasure. In Storment, Walgreens failed to account for the foreseeable event that a vaccine recipient would become dizzy. In this case, Bergdall allegedly failed to account for the foreseeable event that turning Perry would cause the tracheostomy to dislodge. Yet, in both cases the unfortunate, albeit foreseeable, chain of events "cannot be divorced from the administration of a covered countermeasure." Storment, 2022 WL 2966607, at *3. Defendants may have been negligent for turning Perry in a manner that caused her tracheostomy to dislodge, yet her injury is still causally related to the administration of the cuffed tracheostomy.

¶45 The Court of Civil Appeals cites Mills, 298 A.3d 605, to support its conclusion that the PREP Act is inapplicable in this case. Mills is distinguishable. In that case, a plaintiff alleged that certain physicians and a hospital were negligent for failing to admit the decedent to a catheterization lab after experiencing a heart attack. Id. at 610. During the COVID-19 public health emergency, the hospital modified protocols to avoid admitting patients suspected to have COVID-19 to the catheterization lab "unless their physical symptoms dictated the need for emergency catheterization." Id. at 611. The decedent presented with a sore throat and headache, but the ER doctor suspected the patient was experiencing a heart attack. Id. The cardiologist disagreed, and a COVID-19 test was administered. Id. at 612. Three days later, the results came back negative, and the cardiologist ordered that the decedent be admitted to the catheterization lab the next morning. Id. at 613. The decedent died from a cardiac event during the night. Id.

¶46 The Connecticut Supreme Court concluded that while the administration of a COVID-19 test--a covered countermeasure--may have delayed the treatment and had a causal relationship to decedent's death, the claim plaintiff actually alleged was that the decedent should have been admitted to the catheterization lab regardless of the outstanding test result. Id. at 632--33. Thus, plaintiff's actual claim was not causally related to the administration of the COVID-19 test. Id. at 633. Notably, the Mills court distinguished Storment because the "plaintiff in that case alleged that her injury was attributable to the improper administration of a covered countermeasure . . . ." Id. at 635 (citing Storment, 2022 WL 2966607, at *1).

¶47 This case is like Storment and not Mills. Plaintiff alleges that her injury was caused by Defendant turning Perry in a manner that dislodged the tracheostomy tube. Having concluded that the acts and omissions injuring Perry fall within the scope of administering a covered countermeasure, Perry's injury is attributable to the improper administration of a covered countermeasure as in Storment. This case is distinguishable from Mills because Plaintiff has not alleged an injury caused by an act or omission unrelated to the administration of a covered countermeasure.

¶48 We hold that Defendants' allegedly negligent acts were part of administering the cuffed tracheostomy; that covered countermeasures were being used by Perry at the time of her injury; and that Plaintiff's claim has a causal relationship with the administration and use of a covered countermeasure.

3.

¶49 Having concluded that the cuffed tracheostomy is a covered countermeasure and that Plaintiff's claims are causally related to the use and administration of that countermeasure, Defendants are immune if they qualify as "covered persons" under the PREP Act. A "covered person" is defined to include a person or entity that is a "program planner" of countermeasures, "a qualified person who prescribed, administered, or dispensed such countermeasure," and officials, agents, or employees of program planners and qualified persons. 42 U.S.C. § 247d-6d(i)(2)(B)(iii)--(v). A program planner includes a "person who supervised or administered a program with respect to the administration, dispensing, distribution, provision, or use of . . . a qualified pandemic or epidemic product, including a person who . . . provides a facility to administer or use a covered countermeasure . . . ." Id. § 247d-6d(i)(6).

¶50 With respect to Defendant Bergdall, Plaintiff argues that she is not a qualified person because "[n]one of the negligent care and treatment is related to the prescription, administration or dispensing of countermeasures." (ROA, Doc. 5, Pl.'s Resp. to Defs.' Mot. to Dismiss at 8.) Plaintiff claims that because the tracheostomy became dislodged during cleaning, no countermeasure was being administered or dispensed at the time of the injury. This is the same theory we rejected with respect to Plaintiff's claim that Bergdall was not administering a countermeasure at the time of Perry's injury. As detailed, Bergdall's acts may have been negligent, but they fall comfortably within the administration of a cuffed tracheostomy. Plaintiff's argument that Bergdall is not a covered person fails.

¶51 Similarly, OU is a covered person as a program planner under the PREP Act. We have little difficulty concluding that OU "supervised or administered a program with respect to the administration, dispensing, distribution, provision, or use of . . . a qualified pandemic or epidemic product . . . ." 42 U.S.C. § 247d-6d(i)(6). In the district court, OU demonstrated its status as a program planner. (Defs.' Joint Mot. to Dismiss at 9--10.) Plaintiff failed to substantively contest this point. (Pl.'s Resp. to Defs.' Mot. to Dismiss at 9). Any argument by Plaintiffs to the contrary is, therefore, waived. Young v. Station 27, Inc., 2017 OK 68404 P.3d 829Bane v. Anderson, Bryant & Co., 1989 OK 140786 P.2d 1230

IV.

¶52 As in Storment, the "chain of events is unfortunate and certainly deserving of a remedy;" however, Congress determined that the appropriate remedy must be obtained from the Covered Countermeasure Process Fund. The cuffed tracheostomy used by Perry is a covered countermeasure; Plaintiff's claims are causally related to the use and administration of that countermeasure; and Defendants are covered persons according to the PREP Act. Accordingly, Defendants are immune from suit and liability in Oklahoma state court.

OPINION OF THE COURT OF CIVIL APPEALS VACATED; TRIAL COURT'S JUDGMENT AFFIRMED.

ROWE, C.J., KUEHN, V.C.J. (BY SEPARATE WRITING), WINCHESTER, EDMONDSON, COMBS, GURICH, DARBY, KANE AND JETT, JJ, CONCUR

FOOTNOTES

Id. Additionally, the district court's journal entry reflects that OU Health Partners was never served by agreement of the parties; nonetheless, the joint motion dismiss was brought "on behalf of all defendants." (ROA, Doc. 6, Journal Entry of J. at 1.)

See Okla. Sup. Ct. R. 1.32. As shown in the Defendants' joint response, the district court in fact considered the motion and denied it below. Such was within the district court's discretion. Renegar v. Fleming, 1949 OK 209211 P.2d 272

Osage Nation, 2017 OK 34see also Perttu v. Richards, 605 U.S. 460, 472--75 (explaining the relationship between subject matter jurisdiction and the so-called intertwinement principle). The merits of this case will turn on whether Defendants were negligent in the provision of care to Plaintiff. Conversely, the availability of PREP Act immunity turns on whether Plaintiff's claimed loss has "a causal relationship with the administration to or use by an individual of a covered countermeasure . . . ." 42 U.S.C. § 247d-6d(a)(2)(B). This determination can be made without predetermining the merits.

Cannon, 45 F.4th at 139. The restrictive definition of "use" urged by Plaintiff risks negating immunity in a whole host of scenarios involving the negligent employment of covered countermeasures. This conflicts with the purpose of the PREP Act as demonstrated by its text.

Maney determined that the administration of a vaccination extends beyond the physical act of directly injecting a particular person with a vaccine, it is even more apparent that a broader scope of conduct is encompassed within the administration of the countermeasure supplied to Perry. Unlike a vaccination, which is dispensed at a discrete time, other countermeasures are dispensed and used over longer period. For example, when a patient is placed on a mechanical ventilator, health care professionals are administrating and dispensing the countermeasure the entire time the patient is on the ventilator. See Ashley, 245 N.E.3d 658, at *4. The cuffed tracheostomy in this case, which was used to dispense oxygen on the day of Perry's injury, is like a ventilator in that it was used over a period of time and, therefore, continually administered.

KUEHN, V.C.J., Concurring Specially:

¶1 I agree with the Majority's conclusion that PREP Act immunity applies here. I write separately to clarify the Opinion and because I disagree a) with our consideration of Bergdall's status and b) that OU Medicine, Inc. is a program planner.

PREP Act Immunity

¶2 Perry was a thirty-seven-year-old disabled female when she presented at OU Medical Center with COVID-19 and COVID-related pneumonia on September 14, 2021. Perry had been dependent on an uncuffed tracheostomy tube since she was two years old. Generally, an uncuffed tracheostomy tube does not prevent air from leaking out of the opening in the neck but allows a person to speak and to breathe. A cuffed tracheostomy tube prevents air from leaking out of the opening in the neck but limits speech and the ability to breathe without the tube. Physicians determined that Perry needed to be placed on a ventilator to treat her COVID-19. Because Perry's uncuffed tracheostomy tube was incompatible with a ventilator, her uncuffed tracheostomy tube was exchanged for a cuffed tracheostomy tube, which was then attached to a ventilator. After Perry showed signs of improvement, the ventilator was removed on September 18, but the cuffed tracheostomy tube remained. On September 19, Bergdall turned Perry onto her side in order to clean her. The cuffed tracheostomy tube became dislodged and blocked Perry's airway. Perry suffered acute anoxic encephalopathy as a result of the lack of oxygen.

¶3 The PREP Act provides a "covered person" with immunity from federal and state tort claims if the United States Secretary of Health and Human Services has declared a public health emergency and a patient is injured or died while the covered person was responding to the public health emergency by using or administering a drug, device, or product (the "covered countermeasure") as defined by the PREP Act. If the defendant is a covered person using or administering a covered countermeasure and the injury had a causal relationship to the use or administration of the covered countermeasure under the PREP Act, both state and federal courts lack jurisdiction, and a plaintiff may seek compensation through the Countermeasures Injury Compensation Program. However, if the covered person's willful misconduct caused either serious physical injury or death, the injured person, or their representative, may file suit in the United States District Court for the District of Columbia only. See, e.g., Timken v. S. Denver Cardiology Assocs., P.C., No. 24-1378, 2025 WL 2961546, at *5 (10th Cir. Oct. 21, 2025) (explaining PREP Act immunity and preemption).

¶4 The trial court granted Defendants' motion to dismiss, finding PREP Act immunity applied because (1) Defendants were covered persons, (2) the cuffed tracheostomy tube was a covered countermeasure, and (3) Perry's injuries were related to the dislodgement of the cuffed tracheostomy tube. Perry appealed, asking this Court to determine whether OU Medicine was a distributer or a program planner under the PREP Act, whether Perry was receiving a covered countermeasure at the time of her injury, and whether all medical treatment Perry received were covered countermeasures.

¶5 In a split opinion, COCA reversed, assuming without deciding that the required public health emergency declaration had been made, Defendants were covered persons, and that the cuffed tracheostomy tube was a covered countermeasure. COCA concluded that Perry's injury as alleged was not causally related to the use or administration of a covered countermeasure because the alleged harm occurred after the cuffed tracheostomy tube had been dislodged. Judge Huber dissented, noting that the cuffed tracheostomy tube was used and administered in direct response to Perry's COVID-19 diagnosis.

Covered Persons

¶6 The Majority briefly considers whether DefendantsId. § 247d-6d(i)(5); see also Corbett v. Longwood Plantation-FHE, LLC, 674 F. SupP.3d 245, 251 (D.S.C. 2023).

¶7 According to Perry's Petition, OU Medicine, Inc., is a domestic not-for-profit corporation doing business in the state of Oklahoma. Perry asks this Court to consider only OU Medical Center's status as a covered person and does not appeal the trial court's determination that Bergdall was a covered person. Accordingly, the Opinion should be limited to whether OU Medicine, Inc. (as owner and operator of OU Medical Center) is a covered person under the PREP Act and decline to consider Bergdall's status. In the motion to dismiss, Defendants argued that OU Medicine could be considered a qualified person, a program planner, and a distributor under the PREP Act. The trial court granted the motion to dismiss, finding that Defendants were "covered persons." Perry does not ask this Court to consider whether OU Medicine is a "qualified person" under the PREP Act, but rather whether OU Medicine is a distributor or a program planner.

¶8 The Opinion provides a brief analysis before determining that OU Medicine is a program planner. The PREP Act defines a "program planner" as

[A] State or local government, including an Indian tribe, a person employed by the State or local government, or other person who supervised or administered a program with respect to the administration, dispensing, distribution, provision, or use of a security countermeasure or a qualified pandemic or epidemic product, including a person who has established requirements, provided policy guidance, or supplied technical or scientific advice or assistance or provides a facility to administer or use a covered countermeasure in accordance with declaration under subsection (b).

42 U.S.C. § 247d-6d(i)(6).

The Majority omits the "State or local government" requirement, apparently assuming either that the "State or local government" requirement does not apply to the "other person who supervised or administered a program" part of the definition or that OU Medicine fits within the "State or local government" category. The record and the pleadings are silent on the issue of whether OU Medicine is an employee of the state or local government. Without further information in the record, I would conclude that OU Medicine is a "qualified person" as defined under the Act, but not a "program planner." 

Covered Countermeasure

¶9 The trial court found that the cuffed tracheostomy tube was a covered countermeasure. Perry asks this Court to consider whether Perry was receiving a covered countermeasure at the time of her injury, and whether all medical treatment that Perry received was a covered countermeasure. Because Perry raised the issue of whether all medical treatment was a covered countermeasure for the first time on appeal, I would decline to consider that issue. As noted by the Majority, a cuffed tracheostomy tube is a covered countermeasure. See 42 U.S.C. §§ 247d-6d(i)(1)(D), (i)(7); see also 21 C.F.R. §§ 868.7530, 868.5800, 868.5895 (identifying therapeutic devices).

Causal Relationship to the Administration or Use of a Covered Countermeasure

¶10 COCA relied on a March 17, 2020 declaration by the Secretary of Health and Human Services (the "March 17, 2020 Declaration") that the definition of "administration" "extends only to physical provision of a countermeasure to a recipient, such as vaccination or handing drugs to patients, and to activities related to management and operation of programs and locations for providing countermeasures to recipients, such as decisions and actions involving security and queuing, but only insofar as those activities directly relate to the countermeasure activities." Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 FR 15198-01, § IX. COCA did not consider a definition of "use," but rather concluded that, because the cuffed tracheostomy tube had become dislodged, the tube was not in use. I disagree. First, COCA recognizes that the March 17 Declaration is not binding but considered the March 17 Declaration independent of the language in the PREP Act. Second, COCA considered only the March 17 Declaration without considering later declarations issued before Perry's September 14, 2021 admission date. 

¶11 The PREP Act provides immunity "with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." 42 U.S.C. § 247d-6d(a)(1). The immunity applies to "any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure, including a causal relationship with the design, development, clinical testing or investigation, manufacture, labeling, distribution, formulation, packaging, marketing, promotion, sale, purchase, donation, dispensing, prescribing, administration, licensing, or use of such countermeasure." Id. § 247d-6d(a)(2)(B).

¶12 Here, Defendants physically provided the covered countermeasure to Perry, and Perry's injuries "were 'caused by, ar[ose]out of, relat[ed] to, or result[ed] from' the physical provision of a covered countermeasure, i.e., a respiratory protective device."
Ashley v. Anonymous Physician 1, 2024 WL 4142508, *4, 245 N.E.3d 658 (Ind. Ct. App. 2024) (table), transfer denied, 253 N.E.3d 524 (Ind. 2025). COCA's holding that because the tube had become dislodged for several minutes it was no longer in use is too narrow. The OU Defendants exchanged Perry's uncuffed tracheostomy tube for a cuffed tracheostomy tube in order to place Perry on a ventilator to treat her COVID-19 pneumonia. Perry's cuffed tracheostomy tube was dislodged when Bergdall moved her onto her side. "This chain of events cannot be separated from the administration of a covered countermeasure . . . . The PREP Act therefore applies." Cowen v. Walgreen Co., No. 22-CV-157-TCK-JFJ, 2022 WL 17640208, at *3 (N.D. Okla. Dec. 13, 2022).

¶13 I would decline to consider whether Bergdall was a covered person and find that because OU Medicine was a qualified person, not a program planner, OU Medicine was a covered person under the PREP Act.

FOOTNOTES

See 42 U.S.C. § 247d-6d(i)(6) (8) ("The term 'qualified person, when used with respect to the administration or use of a covered countermeasure, means--(A) a licensed health professional or other individual who is authorized to prescribe, administer, or dispense such countermeasures under the law of the State in which the countermeasure was prescribed, administered, or dispensed; or (B) a person within a category of persons so identified in a declaration by the Secretary under subsection (b)."). Perry also asks this Court to consider whether OU Medicine is a distributor under the PREP Act. The Opinion only addresses the "program planner" analysis, perhaps because OU Medicine does not easily fit within the definition. See id. § 247d-6d(i)(3) ("The term 'distributor' means a person or entity engaged in the distribution of drugs, biologics, or devices, including but not limited to manufacturers; repackers; common carriers; contract carriers; air carriers; own-label distributors; private-label distributors; jobbers; brokers; warehouses, and wholesale drug warehouses; independent wholesale drug traders; and retail pharmacies.").

see also Amendment to Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 FR 21012-02, § VI ("Covered Countermeasures are any antiviral, any other drug, any biologic, any diagnostic, any other device, any respiratory protective device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom, or any device used in the administration of any such product, and all components and constituent materials of any such product.").